**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WINFIELD SCOTT TOWER URBAN RENEWAL LP,<br><br>Plaintiff,<br><br>v.<br><br>LORISSA LUCIANI, *et al.*,<br><br>Defendants. | Civil Action No. 23-133 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

      This matter comes before the Court upon Defendants Lorissa Luciani ("Luciani"), Angela Goode ("Goode"), and the New Jersey Department of Community Affairs' Division of Housing and Community Resources' (the "NJDCA") (collectively, "Defendants") Motion to Dismiss (ECF No. 32) Winfield Scott Tower Urban Renewal LP's ("Winfield" or "Plaintiff") Second Amended Complaint ("SAC") (ECF No. 31). Plaintiff opposed (ECF No. 33), and Defendants replied (ECF No. 34). After careful consideration of the parties' submissions, the Court decides Defendants' motion without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons outlined below, Defendants' motion to dismiss is granted, and the SAC is dismissed without prejudice.

## I.    **BACKGROUND**

### A.    **Factual Background**[1]

Winfield, a Florida-based Limited Partnership that does business in New Jersey, owned a property located in Elizabeth, New Jersey (the "Property") on which the NJDCA held a mortgage valued at $1,680,000 plus accrued interest. (SAC ¶¶ 6, 10-11, 34, ECF No. 31.) In or about May 2021, Winfield contracted to sell the Property to Magill Tower Urban Renewal ("Magill" or "Purchaser") for $6,200,000. (*Id.* ¶ 12.)

To complete the sale, Magill was to assume the mortgage held by the NJDCA, which had an outstanding balance of $2,864,607.12. (*Id.* ¶¶ 13-15.) The NJDCA approved Magill's assumption of the mortgage several months prior to the closing of the sale. (*Id.* ¶ 16.) Rather than assuming the entire balance of the mortgage, however, Magill only assumed $2,172,214.12. (*Id.* ¶ 21.) Before the closing, the NJDCA, acting through Goode and Luciani (collectively "the Individual Defendants"), required Winfield to pay off the entire balance of the mortgage—$1,184,607.12 in outstanding interest and $1,680,000.00 in principal—plus an additional $692,393.00. (*Id.* ¶ 17.) Upon Winfield's inquiry, the NJDCA informed Winfield that it was required to pay the additional $692,393.00 because Defendants did not want it to profit from the sale. (*Id.* ¶¶ 18-20.) Defendants wanted to give the purchaser, who is allegedly African American, the benefit of this $692,393.00 payment so that they could "stick it" to Daniel Cohen ("Cohen"), Winfield's Caucasian Jewish principal. (*Id.* ¶¶ 23-25.) Winfield, either through mistake or receipt of an improper payoff figure, then paid $3,557,000.12 to the NJDCA, rather than the $2,864,607.12 that it owed. (*Id.* ¶ 35.)

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

### B.    Procedural Background

Winfield commenced this action on January 11, 2023, against only the Individual Defendants, alleging that they violated its property and contract rights in an arbitrary and capricious manner, entitling it to relief under 42 U.S.C. § 1983. (Compl. ¶¶ 2-4, 17, ECF No. 1.) On May 22, 2023, the Individual Defendants moved to dismiss Winfield's Complaint, (ECF No. 10), and on August 22, 2023, Winfield filed a cross-motion to amend its Complaint (ECF No. 19). After Winfield's cross-motion to amend went unopposed, this Court granted the motion to amend[2] and subsequently dismissed the Amended Complaint without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] (*See generally* Mem. Op., ECF No. 28.)

Shortly thereafter, on February 28, 2024, Winfield filed the SAC, which again named the Individual Defendants in their official and personal capacities as defendants and added the NJDCA as a defendant. (SAC ¶¶ 3, 7-9.) The SAC contains one count against Defendants alleging deprivation of Winfield's "contract and property" rights in violation of the Fourteenth Amendment's Due Process Clause ("Count One") (SAC ¶¶ 10-31) and one count for breach of contract against the NJDCA ("Count Two") (*Id.* ¶¶ 32-36). Defendants moved to dismiss the SAC in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) on March 20, 2024. (Notice of Mot. to Dismiss, ECF No. 32.) Winfield opposed the motion on April 1, 2024 (Pl.'s Opp'n Br., ECF No. 33), and Defendants replied on April 8, 2024 (Defs.' Reply Br., ECF No. 34).

---

[2] Since Plaintiff's Amended Complaint did not alter any factual allegations, the Court construed the Individual Defendants' motion to dismiss the Complaint as a motion to dismiss the Amended Complaint. (*See* Mem. Op. 1-2.)

[3] Unless otherwise noted, all references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1) Standard[4]

At any time, a defendant may move to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). Fed. R. Civ. P. 12(b)(1), (h)(3). "A motion to dismiss . . . for lack of subject matter jurisdiction made prior to the filing of the defendant's answer is a facial challenge to the complaint." *Bennett v. Atl. City*, 288 F. Supp. 2d 675, 678 (D.N.J. 2003) (citations omitted). "A facial 12(b)(1) challenge, which attacks the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to consider the allegations of the complaint as true." *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (internal quotation marks and citation omitted). The Third Circuit has "repeatedly cautioned against allowing a Rule 12(b)(1) motion . . . to be turned into an attack on the merits." *Id.* at 272 n.14.

### B.    Rule 12(b)(6) Standard

Rule 8(a)(2) "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept

---

[4] "A motion to dismiss on the grounds of state sovereign immunity is properly brought pursuant to Rule 12(b)(1) because the Eleventh Amendment 'is a jurisdictional bar which deprives federal courts of subject matter jurisdiction.'" *Van Orden v. Borough of Woodstown*, 181 F. Supp. 3d 237, 243 (D.N.J. 2015) (quoting *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996)).

them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.    **DISCUSSION**

For the reasons set forth below, Defendants' motion to dismiss is granted. The Court first addresses the question of whether Defendants are immune to suit before turning to the sufficiency of Winfield's pleadings.

### A.    **Eleventh Amendment Immunity**

Defendants argue that Plaintiff's SAC should be dismissed under Rule 12(b)(1) because the NJDCA and the Individual Defendants in their official capacities are immune from suit under the Eleventh Amendment. (Defs.' Moving Br. 10-13.) Plaintiff does not provide an argument in opposition. (*See generally* Pl.'s Opp'n Br.) For the reasons below, Defendants' motion pursuant to Rule 12(b)(1) is granted as to the NJDCA and the Individual Defendants in their official capacities.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. State agencies, therefore, are generally immunized by the Eleventh Amendment from suits seeking damages in federal court. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). A state agency qualifies for sovereign immunity if it is considered an "arm of the state." *See Lawton v. N.J. Dep't of Cmty. Affs.*, No. 15-8526, 2016 WL 5012321, at *2 (D.N.J. Sept. 16, 2016) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429-30 (1997)). The Third Circuit has previously found that the NJDCA, as "a principal department 'established in the Executive Branch of the State Government[,]'" is entitled to sovereign immunity under the Eleventh Amendment. *See Rhett v. Evans*, 576 F. App'x 85, 88 (3d Cir. 2014) (quoting N.J. Stat. Ann. § 52:27D-1); *see also Lawton*, 2016 WL 5012321, at *2 (finding that the NJDCA is immune from suit under the Eleventh Amendment). State officials sued in their official capacities are also generally immunized by the Eleventh Amendment from suits seeking damages in federal court, and this immunity extends to employees of the NJDCA sued in their official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (citing *Cory v. White*, 457 U.S. 85, 90 (1982)) (citation omitted).

There are, however, three exceptions to a state's sovereign immunity under the Eleventh Amendment: "1) congressional abrogation[;] 2) state waiver[;] and 3) suits against individual state officers for prospective relief to end an ongoing violation of federal law." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001). As discussed below, none of these exceptions apply.

### 1.    *Congressional Abrogation*

Winfield does not cite nor implicate a statute abrogating sovereign immunity. (*See generally* SAC.) Winfield sues under 42 U.S.C. § 1983, alleging a violation of its Fourteenth

Amendment rights. (SAC ¶¶ 2-4.) While 42 U.S.C. § 1983 "provides a federal forum to remedy many deprivations of civil liberties," it does not override the Eleventh Amendment and "provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *see also Quern v. Jordan*, 440 U.S. 332, 340-41 (1979) (finding § 1983 does not abrogate states' sovereign immunity under the Eleventh Amendment); *Edelman v. Jordan*, 415 U.S. 651, 675-77 (1974) (same).

### 2. *State Waiver*

Defendants have not waived their sovereign immunity. A state defendant's waiver of its sovereign immunity must be voluntary and done through a "clear declaration that it intends to submit itself to [federal] jurisdiction." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999) (internal citations omitted); *see also Pennhurst State Sch. & Hosp.*, 465 U.S. at 99 (noting that a state must "unequivocally express[ ]" a waiver of immunity) (citing *Edelman*, 415 U.S. at 673). Here, the SAC does not specify if, or how, Defendants waived their immunity, nor any actions that would allow the Court to infer that they did so impliedly. (*See generally* SAC.)

### 3. *Prospective Relief*

Finally, the third exception is inapplicable. Suits for prospective relief for ongoing violations of state law have been allowed in federal court since the Supreme Court recognized the "legal fiction" that state officials are stripped of their official or representative character and thereby deprived of the State's immunity when they commit an ongoing violation of federal law. *Del. River Joint Toll Bridge Comm'n v. Sec'y Pa. Dep't of Lab. & Indus.*, 985 F.3d 189, 193-94 (3d Cir. 2021) (citing *Ex Parte Young*, 209 U.S. 123, 145 (1908)). Winfield is seeking monetary damages for a past harm, rather than prospective relief. (SAC ¶ 36); *see also Wright v. N.J. Dep't*

*of Educ.*, 115 F. Supp. 3d 490, 499 (D.N.J. 2015) ("Compensatory . . . damages are designed to remedy a past wrong against the plaintiff, exactly the type of relief barred by the Eleventh Amendment.") (citing *MCI Telecomm. Corp.*, 217 F.3d at 506). This Court, therefore, dismisses the complaint without prejudice as to the NJDCA and the Individual Defendants sued in their official capacities pursuant to Rule 12(b)(1).[5]

### B.      Qualified Immunity

Winfield also brings Count One against the Individual Defendants "individually." (SAC ¶ 3.) State officials sued in their personal capacity are not entitled to Eleventh Amendment immunity. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991); *Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 856 (3d Cir. 2014). The Individual Defendants, therefore, are not entitled to sovereign immunity, and are "persons" amenable to suit under § 1983. *See Est. of Lagano*, 769 F.3d at 856 (citing *Hafer*, 502 U.S. at 27). The Individual Defendants argue alternatively, however, that they are immune to suit through the doctrine of qualified immunity. (Defs.' Moving Br. 15-18.)

Qualified immunity shields public officials from civil damages liability as long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal citation omitted). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7,

---

[5] As Winfield's breach of contract claim is pled only against the NJDCA, Count Two is dismissed without prejudice for lack of subject matter jurisdiction. This holding does not prohibit Winfield from bringing its breach of contract claim in state court, where New Jersey has waived its sovereign immunity. *See NJSR Surgical Ctr., L.L.C. v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 979 F. Supp. 2d 513, 519-20 (D.N.J. 2013) (holding that the State of New Jersey waived its sovereign immunity in the New Jersey Contractual Liability Act for breach of contract actions brought in state court *only*).

11-12 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). A public official's liability thus, "generally turns on the 'objective legal reasonableness' of the action." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quoting *Harlow*, 457 U.S. at 819). Importantly, "qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)); *see also Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) (cautioning that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases").

Winfield alleges that it has been deprived of its "[Fourteenth] [A]mendment and due process" rights, as well as its "property and contract rights." (SAC ¶¶ 3, 29.) Defendants' principal argument supporting that the Individual Defendants are entitled to qualified immunity is that their actions, in declining to permit Winfield to keep the $692,393, were reasonable because "there is no question" that Winfield owed that money pursuant to the mortgage agreement. (Defs.' Moving Br. 17.) To the contrary, whether Winfield owed this money is the core dispute underlying this action. (*See* Pl.'s Opp'n Br. 14-15.) Construing the SAC in the light most favorable to Plaintiff, this Court thus finds that the Individual Defendants have not carried their burden of demonstrating that qualified immunity bars the suit against them in their personal capacities.

### C.    Section 1983 Claim (Count One)

Winfield fails to state a § 1983 claim because the Complaint includes only conclusory allegations that are insufficient to state a claim upon which relief can be granted. "Section 1983 subjects to liability those who deprive persons of federal constitutional or statutory rights 'under color of any statute, ordinance, regulation, custom, or usage' of a state." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (quoting 42 U.S.C. § 1983). To state a claim under § 1983, therefore,

Plaintiff must allege facts, which if proven, establish: (1) the violation of a right secured by the Constitution and the laws of the United States; and (2) that the person depriving Plaintiff of the right acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Here, Plaintiff alleges a violation of the Fourteenth Amendment. (*See* SAC ¶ 3.) Specifically, the Court understands the SAC to put forth a substantive due process claim.[6]

With respect to a substantive due process claim, "a plaintiff must demonstrate that an arbitrary and capricious act deprived them of a protected property interest." *Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1292 (1993) (citation omitted) (citing *Moore v. Warwick Pub. Sch. Dist.*, 794 F.2d 322, 329 (8th Cir. 1986)). Only "egregious official conduct" that "shocks the conscience" meets this arbitrary and capricious standard. *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998) (internal quotations omitted) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "[M]erely alleging an improper motive is insufficient, even where the motive is unrelated to the merits of the underlying action." *Bell v. Twp. of Maplewood*, No. 19-12980, 2021 WL 3260848, at *11 (D.N.J. July 30, 2021) (quoting *Chainey v. Street*, 523 F.3d 200, 220 (3d Cir. 2008)). Whether a property interest is so fundamental that deprivation of that interest gives rise to a substantive due process claim, "depends on whether that interest is 'fundamental' under the United States Constitution." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 140 (3d Cir. 2000) (citations omitted). "The Third Circuit has long recognized that '[o]nly certain state contracts create

---

[6] Plaintiff does not mention any "procedures" or provide facts in the SAC or briefing from which the Court can infer that Plaintiff meant to plead a procedural due process claim. (*See generally* SAC; Pl.'s Opp'n Br.); *see also Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2006)) (To state a procedural due process claim under § 1983, a plaintiff must allege that: "(1) [it] was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to [it] did not provide 'due process of law.'").

protected property interests under the Fourteenth Amendment.'" *Greenwald Assocs. LLC v. Hous. Auth. of City of Newark*, No. 21-12136, 2022 WL 1505005, at *3 (D.N.J. May 12, 2022) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 207 (3d Cir. 2007)). Specifically, two types of contract rights are considered property under the Fourteenth Amendment: (1) contracts that confer a protected status; and (2) contracts that include "a provision that the state entity can terminate the contract only for cause." *Id.* (quoting *Linan-Faye Const. Co. v. Hous. Auth. of City of Camden*, 49 F.3d 915, 931-32 (3d Cir. 1995)).

Here, even if the Court assumes that Winfield properly articulates a protected property interest, its claim must still be dismissed because it does not adequately plead that the Individual Defendants engaged in arbitrary and capricious conduct depriving it of that interest. To be clear, Winfield asserts that its Fourteenth Amendment contractual and property rights were violated by the Individual Defendants when they allegedly required Winfield to pay $692,393, which it did not owe. (SAC ¶¶ 21, 26.) According to Winfield, the Individual Defendants did this because they "did not want [Winfield] to make any money on its investment[]" in order to aid either themselves or the purchaser's allegedly African-American principal because Cohen is "Caucasian Jewish." (*Id.* ¶¶ 22-25.)

Rather than providing facts to suggest the Individual Defendants acted out of racial or antisemitic animus towards Cohen, however, Winfield merely states that "[t]here simply is no other explanation." (SAC ¶ 25.) Stripping away these conclusory allegations of racism and antisemitism, and reading the SAC in the light most favorable to the Plaintiff by assuming Winfield was not contractually obligated to pay the additional $692,393, there is nothing in the SAC from which the Court can infer that the Individual Defendants engaged in "conscience-shocking" behavior

sufficient to satisfy the arbitrary and capricious pleading standard.[7] The Court accordingly dismisses Count One without prejudice. Out of an abundance of caution, the Court will grant Plaintiff a final opportunity to amend its complaint and adequately outline for the Court how the wrongful behavior Plaintiff alleges "violated [P]laintiff's protected property and contract rights under the Constitution and in violation of USC 42 § 1983 [sic]." (SAC ¶ 29.)

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, Defendants' motion to dismiss is granted. Winfield's SAC is dismissed without prejudice. The Court will issue an Order consistent with this Memorandum Opinion.


MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[7] *See Haberle v. Troxell*, 885 F.3d 170, 177 (3d Cir. 2018) ("For behavior by a government officer to shock the conscience, it must be more egregious than 'negligently inflicted harm,' as mere negligence 'is categorically beneath the threshold of constitutional due process.'") (quoting *Lewis*, 523 U.S. at 849); *see also Henderson v. Pa. State Univ.*, No. 21-872, 2022 WL 838119, at *10 (M.D. Pa., Mar. 21, 2022) (dismissing § 1983 claim where plaintiff failed to support his allegation of racism with reference to specific incidents or concrete factual allegations of racism); *Jackson v. Madery*, 158 F. App'x 656, 659 (6th Cir. 2005) (dismissing § 1983 claims containing only "vague, conclusory allegations of racial discrimination"), *abrogated on other grounds by Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018); *see also Doe v. Trs. of the Univ. of Pa.*, 270 F. Supp. 3d 799, 821 (E.D. Pa. 2017) (finding that complaint asking the court to infer racial bias exclusively from the fact that the plaintiff was African American alleged discrimination in a conclusory fashion).